IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| Jacob A. Koch, | ) | C/A No.: 1:09-878-RBH-SVH |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| South Carolina Department of Corrections, Warden Stan Burt, Sgt. Franklin Jones, Jr., Roger Fincher, and Inmate Jason Catteron, | ) | |
| Defendants. | ) | |

Plaintiff, who is proceeding *pro se* in this action, is an inmate at Lieber Correctional Institutional ("LCI"). Plaintiff has alleged various violations of his constitutional rights, which are construed as brought pursuant to 28 U.S.C. § 1983.

Before the court is Defendants'[1] Motion to Dismiss/Summary Judgment [Entry #16]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motion for

---

[1] "Defendants" as used herein refers to Defendants South Carolina Department of Corrections ("SCDC"), Warden Stan Burt, Sgt. Franklin Jones, Jr., and Roger Fincher. Although Inmate Jason Catterton is also a named Defendant, the docket is not clear as to whether Defendant Catterton has been served. If Defendant Catterton has not been served, his joinder in removal would not be required pursuant to the holding in *Barbour v. International Union*, 594 F.3d 315 (2010). If Defendant Catterton has been served, this procedural defect will not prevent this court from exercising jurisdiction. *See Payne v. Calzada*, 439 F.3d 198, 203 (2006) ("Failure of all defendants to join in the removal petition does not implicate the court's subject matter jurisdiction. Rather, it is merely an error in the removal process. As a result, a plaintiff who fails to make a timely objection waives the objection.") (citations omitted).
Regardless, as discussed further below, there do not appear to be any federal claims against Defendant Catterton, and it is recommended the court decline to exercise supplemental jurisdiction over any state law claims.

summary judgment is a dispositive motion, this Report and Recommendation is entered for review by the district judge.

I.   Factual and Procedural Background

Plaintiff filed his complaint in this action in state court on February 12, 2009 [Entry #1-1]. Defendants removed the matter to this court on April 3, 2009, and filed their motion for summary judgment on October 13, 2009. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' motion [Entry #17]. Plaintiff timely filed a response in opposition to Defendant's motion [Entry #19]. Having carefully considered the parties' submissions and the record in this case, the court recommends Defendants' motion for summary judgment be granted.

Plaintiff first alleges that his civil rights were violated when Defendants failed to protect him from an assault while Plaintiff was incarcerated at LCI. Specifically, Plaintiff alleges that on September 6, 2006, Plaintiff and his cellmates were ordered to back up to the window of their cell to be handcuffed for shower time. (Compl. 2–3). Plaintiff was handcuffed first, and immediately afterwards his cellmate, Inmate Catterton, began striking him in the face until he fell over. (Compl. 3). After Plaintiff fell on the cement floor, Catterton continued kicking Plaintiff until he lost consciousness. (*Id.*) Plaintiff next awoke in the LCI medical room and was later taken to Trident Hospital for his injuries, where he received stitches and a CAT scan that revealed bleeding in his brain. (*Id.*)

Plaintiff alleges he was "supposed to stay in the infirmary for a few days," but the infirmary had no room. (*Id.*) Plaintiff refused to be placed in a two-man cell because he feared for his safety and there were no empty single cells. (Compl. 3–4). Therefore, Plaintiff alleges he was placed "in a hallway that had a cage gate at each end," no running water, no sink and no toilet. (Compl. 4). Plaintiff also alleges he was only checked on by the nurse twice during this time. (*Id.*)

II. Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e); *see also Celotex v. Catrett*, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. *See* Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the *Celotex* case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. *Celotex*, 477 U.S. at 322–323.

III. Analysis

    A. Exhaustion of Administrative Remedies

Defendants first contend that Plaintiff did not exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e(a). Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff must avail himself of every level

of available administrative review. *See Booth v. Churner*, 532 U.S. 731 (2001). Those remedies neither need to meet federal standards, nor are they required to be plain, speedy, and effective. *Porter*, 534 U.S. at 524 (quoting Booth, 532 U.S. at 739). Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly*." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Thus, "it is the prison's requirements, and not the [Prison Litigation Reform Act], that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

Pursuant to SCDC policy, an inmate seeking to complain of prison conditions must first attempt to informally resolve his complaint. Next, an inmate may file a "Step 1 Grievance" with designated prison staff. If the Step 1 Grievance is denied, the inmate may appeal to the warden of his facility via a "Step 2 Grievance." In Plaintiff's opposition, Plaintiff claims that he filed a Step 1 grievance and a Step 2 Grievance. (Pl.'s Br. at 4). Plaintiff attaches a copy of the Step 1 grievance [Entry #19-5]. The defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 683 (4th Cir. 2005). The court finds that Defendants have not met their burden of demonstrating Plaintiff has failed to exhaust his administrative remedies.

B.   Failure to Protect

It is undisputed that Plaintiff was assaulted by Catterton on September 6, 2006. The treatment a prisoner receives in prison and the conditions under which he is confined

are subject to scrutiny under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Not every injury suffered by one inmate at the hands of other inmates constitutes liability for the prison officials responsible for the victim's safety. *Id.* at 835. A prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate, however, does violate the Eighth Amendment. *Id.* at 828. "[A] prison official may be held liable under the Eighth Amendment . . . only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. The test is not whether an official knew or should have known of a substantial risk of serious harm, but whether he did, in fact, know of it and consciously disregard that risk. "[T]he official must be both aware of facts from which the inference could be drawn that a possibility of harm exists, and he must also draw the inference." *Id.* at 837. Further, the Eighth Amendment is not violated by the negligent failure to protect inmates from violence. *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Plaintiff has neither alleged nor submitted evidence that Defendants knew of a specific risk of harm to Plaintiff and consciously disregarded it. Thus, the bad acts of the assailant inmate cannot be constitutionally imputed to any of Defendants to support Plaintiff's failure-to-protect claim on the facts of this case.

Plaintiff alleges that Defendants violated his rights by failing to act quickly enough to stop the assault. Defendants contend, and Plaintiff does not dispute, that Defendant Fincher immediately ordered Catterton to stop striking Plaintiff. (*See* Jones Aff. at Entry #16-1). When Cattertron did not respond to direct orders, Defendant Fincher discharged

chemical munition into the cell. (*Id.*) When Catterton continued to ignore Defendant Fincher's orders, Defendant Jones discharged more chemical munition into the cell, which subdued Catterton. (*Id.*) Defendant Fincher then entered the cell and restrained Catterton. (*Id.*) Plaintiff admits that following the altercation, he was taken to the LCI medical division, and later to Trident Hospital, for treatment for his injuries. Thus, Plaintiff has failed to set forth allegations establishing a constitutional violation for failure to protect.

C. Conditions of Confinement

Plaintiff also argues that his constitutional rights were violated by his conditions of confinement after he returned to LCI. He claims Defendants should have made room for him in the infirmary or in a single-man cell. Plaintiff admits that Defendants offered him to be placed in a two-man cell, but that he feared for his safety and refused.

While federal courts are reluctant to interfere in the conduct and administration of correctional institutions, where deprivations of prison confinement amount to violations of constitutional guarantees, courts will exercise their right of judicial review. *See Procunier v. Martinez*, 416 U.S. 396, 404-405 (1974); *Cruz v. Beto*, 405 U.S. 319, 321 (1972). In examining the deprivations complained of by an inmate as a result of this confinement, courts must balance "the legitimate rights of the prisoner (with) the necessary concern and responsibility of the prison authorities for security and order." *Sweet v. South Carolina Department of Corrections*, 529 F.2d 854, 860 (4th Cir. 1975).

In the instant case, the Plaintiff refused to enter a two-person cell and demanded he be placed in a single cell. Upon his request, Plaintiff was placed in a single holding cell for his own protection where he remained until further accommodations could be made for him. To establish a claim for cruel and unusual punishment, a prisoner must make an objective showing of a sufficiently serious deprivation of a basic human need and a subjective showing that prison officials acted with a sufficiently culpable state of mind of deliberate indifference to prison conditions. *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993). Further, the constitutional prohibition against cruel and unusual punishment does not require comfortable prison conditions, and "only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995). Before prison conditions can constitute cruel and unusual punishment, a plaintiff must not only allege prison conditions that "could rise to the level of constitutional violations were they to produce serious deprivations of identifiable human needs," but also submit evidence that he "sustained serious or significant physical or emotional injury as a result of these conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).

Here, Plaintiff's complaints of placement in a holding cell without running water for two nights in order to accomodate his fear of placement with other inmates fails to state a constitutional deprivation. Therefore, Plaintiff's claim should be dismissed.

D.  Medical Indifference

Although it is unclear, it appears that Plaintiff may also be asserting a claim of deliberate indifference to Plaintiff's serious medical needs. The Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. *Id.*

Under these principles, Plaintiff has not alleged sufficient facts stating any claim actionable under § 1983 regarding his medical treatment against Defendants, who are non-medical personnel. Plaintiff does not allege officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Therefore, Plaintiff's claim on this issue must be dismissed.

E.  Qualified Immunity

Defendants also assert that they are entitled to qualified immunity in their individual capacities. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages

insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). As discussed above, Plaintiff has failed to present sufficient evidence to support his constitutional violation allegations. Nevertheless, *assuming arguendo* that Plaintiff has presented sufficient evidence of a constitutional violation, Defendants are entitled to qualified immunity from suit.

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly

established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298.

In the instant case, Plaintiff has failed to establish any theory of liability upon the part of Defendants, and, furthermore, Plaintiff has failed to establish the existence of any constitutional deprivation. However, if the court were to find that Plaintiff has established some theory of liability upon the part of Defendants, and therefore, the existence of a constitutional deprivation, Defendants are still entitled to qualified immunity. The record before the court shows that as to Plaintiff and the specific events at issue, these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. They did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the discretionary exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, these Defendants are entitled to qualified immunity.

IV. Conclusion

For the reasons discussed above, it is recommended that Defendants' Motion to Dismiss/Summary Judgment [Entry #16] be granted and this case be dismissed in its entirety.

IT IS SO RECOMMENDED.

August 3, 2010 Shiva V. Hodges
Florence, South Carolina United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**